We're here on an appeal from the grant of a motion for summary judgment on behalf of the defendant Bill McCarthy the Polk County Sheriff whom my client Dan Charleston ran against in the 2012 election. Mr. Charleston was an 18-year member of or employee of the Polk County Sheriff's Department and had rose to the against Mr. McCarthy. He was in charge as a sergeant in the patrol division, a division in which he had supervisory responsibilities for 12 people. He had the use 24 hours 7 days a week of a patrol car and he had the eligibility to work overtime. During the 2012 campaign he didn't work much overtime because he was campaigning but he still had that availability to him at that time. Mr. Charleston was disciplined by Mr. McCarthy in February 2012 with a two-day suspension for failing to render aid to a person by the name of Jerry Brennan who had collapsed on the roadway or next to the roadway on a sidewalk in Altoona, Iowa. Mr. Charleston appealed that to the Polk County Civil Service Commission and the Commission affirmed that. The trial court has always treated that as not part of this case despite the fact that in namely a number of actions of discipline can rise to the level of an adverse employment action. The trial court has always treated this as a non-factor in the analysis under shock and see. That's because it was beyond the statute of limitations. But you have to remember your honors that eligibility for occurs every two years and the next session or next time in which the promotional list was to come out was in March 2013. So in that two-year period Mr. Charleston had a discipline of a two-day suspension in February 2012 then coupled with a discipline of on February 20th which was a reprimand for basically activities that occurred during the course of Mr. Charleston's campaign against Mr. McCarthy and Mr. McCarthy and others within the command taking exception to what he did. If I recall right, didn't the district court also suggest though that the reprimand wouldn't have had any effect because your client was unable to tie this particular defendant to the promotion list? Well the sheriff selects off of the promotional list but he knows both the sheriff and everybody in the department knows that discipline is going to keep a candidate off of a promotional list. Mr. Charleston testified to that in his to be promoted. When you construe the facts in the light most favorable to Mr. Charleston in this situation the sheriff should know that also and should know that imposing discipline on him will make him ineligible for promotion down the road. Where in the record can we can we find testimony that explains how the promotion list system works? Well I don't think we went through the nuts and bolts of that your honor but I'm gonna argue to you in any employment setting you you have a candidate who has no discipline and you have a candidate who does who's likely to get the promotion in that situation? For example when when you were going on to the bench on the 8th circuit suppose the chief judge took discipline against you and reported you to the judicial ethics board and he did it solely because he was a Democrat and you were a Republican and you got a reprimand. Do you believe that your name would have been forwarded to Congress for a promotion to the 8th circuit with a disciplinary record on you? I I argue that is common sense that is the reality of life here. But I thought that maybe I'm wrong and you can correct me but I thought that one of the actions that's that's pointed to here is is being is the action of being left off of the list. Okay. And it's our position when you. But if we don't know how the promotion list system works you know maybe maybe one maybe what you say is true maybe not maybe maybe under a particular system that's been adopted and promulgated over the years that there are you know there are ways that an employee can can compensate for individual instances of of discipline and I don't know maybe there's a point system who knows that the point is that we don't know the point is we don't know we don't know anything about the promotion list so how can we look at being left off the promotion list as any kind of an adverse action? Well because if you if you're stuck in the same job for 30 years and not being promoted through the ranks you're going to lose pay you're going to lose the opportunity to gain new skills you're going to lose the opportunity to supervise more people. I believe that's being not being eligible for promotion is an adverse employment action. With respect to this though again when you're looking at a summary judgment record you make all inferences in the light most favorable to the plaintiff not in favor of the defendant in this situation and in this situation these are all just things that the defense and the trial court raise to justify not listening to what Dan Charleston testified to saying my discipline left me off the promotional list. That's a fact. They wouldn't he have to be relying on policy that says when we develop our promotion list anyone who has an infraction is kept off I mean otherwise isn't it's just his speculation. I disagree I think that the fact that you have discipline in and of itself would leave you off the promotional list and that anybody would know that. Okay I'll move on to a different issue though. How do we know that? How would we know that? Other than your client saying that. You're an 18 year veteran of this department you've been on the promotional list without discipline. Okay if he testifies whatever the mayor told me that once you have a have a demerit so to speak you're never put on the list or policy number seven says once you're put on the once you have a. Well I can't I cannot cite in the record to that your honor. But did he when he gave that statement that he knows that to be true did he provide a basis for it? Not in his deposition testimony. Okay can I ask a different question? You may. You mentioned the Democrat Republican thing with respect to your political discrimination count is there any evidence that it was the discrimination was on the basis of him being a Republican as opposed to retaliation. Right as opposed to him being somebody who ran against. Judge I would cite you to the testimony of Mr. McCarthy and I got I'm gonna quote it to you and I believe it's at the addendum page nine. You are not going to be a shadow sheriff and be here and survive in this office. You are not going to be a spokesman for the rank-and-file and you're not going to talk against the policies in this administration and get away with that. I believe that that statement is a comment on what Dan did as a Republican candidate. Namely he's raising the issues I disagree with you and I'm not gonna let you get away with it now that I won the election. So I believe that that statement supports the political discrimination and it also supports the political retaliation claim. The discrimination though doesn't that need to be because of his affiliation with the Republican Party? Yes it does. So what in that statement tied other than the fact maybe that he ran as a Republican? Well he ran and he pointed out campaign issues that he disagreed with. See that sounds more like retaliation. Okay. Political discrimination. Well I argue I argue though that no employer or no candidate in this situation is going to come out and say I'm discriminating against you on the basis that you you have to be unsophisticated to do that. He could say hey I notice you're still going to Republican township meetings and they're you know and without saying it maybe it's because he's gonna run against him again you're fired. Okay that's that could happen but again that that's not part of this record but I still believe when he's questioning Dan's policy he's questioning what Dan did as a Republican and that therefore the political discrimination claim still exists. With respect to the adverse employment action here in Wagner versus constitute an adverse employment action but when it leads to a loss then it is an adverse action and here we have that. The day after he gets the reprimand he's removed from the patrol department. He no longer has access to a car 24-7. He's no employees. He's knocked down to four and he's no longer eligible for the overtime. We believe that the trial court completely ignored that when making his her ruling on summary judgment in this matter and I'm over my time right now. May it please the court. Counsel. To answer your question Judge Sheppard of what's in the record concerning the promotional list and one's eligibility to become on the promotional list. The answer is there's nothing in the record on the promotional list. Iowa Code Chapter 341A governs civil service commissions and under that chapter it sets forth that it is the obligation of the Civil Service Commission to create such promotional lists. The three-member Civil Service Commission is made up of an appointee by the sheriff, an appointee by the Board of Supervisors, and an appointee by the county attorney. However, nowhere in that statute does it say what makes one eligible for the promotional list. Nor has Mr. Charleston alleged or introduced evidence that there's a policy of what makes one eligible for the promotion list. By all accounts it is not an objective standard. It is a subjective standard and there is no evidence from the three members of the Polk County Civil Service Commission about what promotional list. They were originally defendants to this lawsuit. However, at no time were affidavits taken from either of them and no time were depositions taken from them. The sole evidence in the record is, as you mentioned your honor, Mr. Charleston's speculation and that occurs on page 120 of his deposition where he testifies, he answers a question, because they look at different things when they are doing the civil service interviews. And if they see multiple amounts of discipline, you may not get ranked as high and you may not make the list or for retaliatory reasons. Does his multiple years of service working there perhaps raise it above the level of speculation? I would say no your honor because the assumption in that statement is that he's aware of everyone else in the department's disciplinary history. Discipline under Iowa law that does not go to the Civil Service Commission is confidential. So I don't think he would have an adequate understanding of his fellow employees disciplinary record. I think that would also be speculation on his part as well. I would also note during his history the composition of the commission and the sheriff changed over time. So I think it would be difficult to extrapolate some level of personal knowledge that would give him the ability to make an evidentiary statement as opposed to mere speculation. What's interesting in this case your honors is that while we all agree that the protected activity in this case is the 2012 campaign for sheriff, all the actionable issues that we're discussing occurred in the months following the campaign and the election. Not during the In fact, several of these events took place four and five months after the campaign. And this court has previously said that even a two-month delay between the protected activity and the alleged adverse employment action breaks that inference of a causal connection. And here we have a far more significant delay. But looking at the adverse employment actions that are alleged in this case, it's important to note that the original 2012, February 2012 suspension, the two-day suspension, that was dismissed by Judge Rose in the original ruling on the motion to dismiss. It is my understanding that that ruling has not been appealed from and as such, falling outside the two-year statute of limitations, that actual suspension is not actionable in this case. The plaintiff has argued that the sheriff's refusal to sua sponte reconsider that suspension over the course of time makes it an actionable event in this case. We would have to disagree. There is no evidence in the record that Sheriff McCarthy had the legal ability to rescind a suspension that was imposed not just by himself but affirmed by the Iowa Civil Service Commission. That decision could have been appealed to the district court in Iowa. It was not done so and it was a final judgment at that time. It is also unclear how the sheriff would have had an obligation every day to reevaluate discipline that he meted out in the past. And that discipline, while we can talk about the supposed lingering effects, it was an isolated two-day suspension that was served in March of 2012. There is no evidence in the record that any effects of that lingered during the actionable period of time in this case, which was April 24, 2012 and onward. So we believe that is a discrete event and that event is not actionable. In this case, as to the three other events, the February 2013 reprimand was not based on conduct that occurred during the campaign. It was based upon conduct that occurred after the campaign. After the campaign, as is traditional, as the sheriff testified to in his affidavit, it is routine for the sheriff's department to look at transfers within the department. And the first transfer lists were going out to the rank-and-file soon thereafter the election. Mr. Charleston, according to the OPS investigation that was done, spoke to individual deputies about their transfers prior to them being informed by Sheriff McCarthy. That's obviously a violation of the chain of command. So that was events that occurred post-election, not pre-election. It's also important to note that that reprimand had no effect on Mr. Charleston's salary or benefits. It's also important to know that command staff recommended to the sheriff that due to Mr. Charleston's actions and his cooperation or lack thereof during the investigation, that he receive anywhere from a suspension to a demotion to termination. Sheriff McCarthy, however, chose to give him a reprimand, which is the lowest form of discipline available. We do not believe that reprimand had any adverse consequences on Mr. Charleston. Turning next to the March transfer to patrol, I think why this case is distinguishable from the shock and see decision is the March transfer from patrol to transport was a He maintained his rank as a sergeant. He maintained his supervisory duties. He also maintained the eligibility for overtime, which Mr. Charleston admitted to in deposition. He said that overtime was less desirable for him because he no longer had the use of a patrol car because it wasn't necessary in his new position. But he was still eligible. He did, Your Honor, but he also testified in position that that did not change the amount of work he had. And unlike shock and see where the original transfer was arguably lateral and then there were two subsequent transfers that were clearly demotions, Mr. Charleston and this record stayed in transport for only a matter of two and a half months before he was transferred again, this time to court staging where he supervised 20 people, which was significantly more than he supervised in patrol. So this two and a half month time period that he supervised transport, we don't believe was adverse in any way. Now that this loss of use of a vehicle. Yes, sir. Isn't that might not might not seem that severe of a deprivation when you just read it on a piece of paper, but for a for an officer with, you know, no law enforcement officers are overpaid, but for a person on with limited financial resources and income, isn't that a severe adverse consequence here or impact? Doesn't it work a severe impact on an officer such as the appellate to use the use of a vehicle? Well, I would note two things, your honor. First, there's no evidence in the record on any kind of financial impact that that loss of a patrol vehicle had on Mr. Charleston. He didn't testify in any way to that fact. I would also note it goes to the purpose of allowing officers to use patrol vehicles both on and off duty. And the purpose is for official actions. It's not to be used off-duty as Chief Joe Simon testified to in his affidavit. It's not a matter of convenience. They are allowed to take the patrol vehicle home so they can better able to respond to emergencies. It's not intended to supplement or replace an individual vehicle. And only deputies and sergeants are provided those vehicles when they have a use for them on the job. In his position in transport, Mr. Charleston did not need the patrol vehicle. But could it not be viewed as a loss of status? I think it could be viewed that way. However, Mr. Charleston testified contrary to that, your honor. When discussing the managerial position in transport, he was specifically asked that question and he required a seasoned veteran. And it was equally as important work for him to do in transport. So there was no, for want of a better term, there was no loss of face F-A-C-E in the eyes of his fellow officers? There's no evidence in the record to support that. Maybe not, but I don't know if we can take judicial notice of the I don't know if that would amount to a material disadvantage to a change of employment, your honor. It certainly is with any transfer there's going to be some changes into your everyday duties. Of course, anytime you take a new assignment there is some change. His I don't think were adverse, however. Again, it remained in that position for only two and a half months and there's no evidence in the record about who has patrol vehicles in the Sheriff's Department, whether or not that's a status symbol, whether or not that's reserved for command staff. And let's see, was any specific reason given for this transfer position? Yes, your honor. During the course of the campaign, it was uncovered by Sheriff McCarthy. He was not the sheriff at the time Mr. Charleston was hired and he discovered that Sergeant Charleston was terminated from his previous position in Pomona, California for lying on a police report. Sergeant Sheriff McCarthy was concerned after discovering that, coupled with his belief in the finding of the OPS investigation, that Sergeant Charleston lacked credibility. That between the judicial finding that he lied in a police report, his current inability to be credible with OPS, questioned his credibility and his ability to testify authoritatively on behalf of the county. And so the justified reason in the record for his transfer was by placing him in transport and not patrol, he would not have to effectuate arrest and would not be required to testify in court. And when did the chief become aware of this incident in California? It occurred sometime during a campaign. I'm not exactly sure of the date, your 2012 or summer of 2012. I suppose one could infer from the chief's silence until after the election that he was holding this in reserve? I don't think so, your honor. I think that there were... In other words, was this transfer after the election, let's see, the definition of a good answer for the real one, or is that a bridge too far? I would say, your honor, there's no evidence in the record to suggest that Sheriff McCarthy's purported reason was not accurate. I would also note that Sergeant Charleston was not amongst the first two waves of transfers post-election, so I would say that the OPS, if you're looking at pure timeline, his lack of would support that his credibility issues were the justification for the transfer. Speaking of the factual record, while I agree with Mr. Fehwiger that this court construes all factual inferences in Mr. Charleston's favor as the non-moving party, as this court has repeatedly said, it cannot and will not adopt a series of facts which contradict the record. And here you have a voluminous record that was submitted by Polk County in support of its motion for summary judgment. Contrary to that, what you have is Mr. Charleston's speculation, which is not based upon personal knowledge. And so the facts here support the county. I'd also note that we don't have a factual dispute. I believe our dispute goes to the legal implications of those factual decisions. And that's why summary judgment was appropriate in this case. And on behalf of Sheriff McCarthy, we would respectfully ask that this court affirm the decision of the district court entering judgment on both counts in his favor. Thank you, Ms. Gabbard. Thank you, Your Honors. Mr. Fehwiger, rebuttal? In answering your question regarding holding back Judge Wollman, Doug Phillips was the person who investigated my client with respect to his activities in Pomona. Doug Phillips had no role in investigating my client. He gave this in 2012, and McCarthy sat on it until he used it as justification for his disciplining my client with a letter of reprimand on February 20, 2013. Therefore, why wasn't Mr. Phillips, who had no responsibility for supervising my client, and then the sheriff using that as justification for the transfer of him? I believe that that's political retaliation in a nutshell. You're using information you learned on the campaign to justify your actions in disciplining him later. Secondly, I want to go back to the December 6, 2012 meeting with McCarthy, his counsel Roger Kuhl. What was the date of that again? December 6. In this case, Mr. Charleston was disciplined for failing to render timely aid to Mr. Brennan in February 2012. In October 2012, Roger Kuhl writes a letter to the Brennan family's saying that there's no medical evidence that we know of that shows that any action or inaction of either deputy could cause or contributed to the death or demise of Mr. Brennan. Kuhl learns on December 5, based on his letter, that the case is then brought up at the December 6 meeting. And instead of reconsidering this discipline, Sheriff McCarthy doubles down here and says, I think he deserved more discipline than what he got. That is grounds for retaliation, I believe. You always hear cases where scientific evidence reverses convictions years later. Why can't we rely on the inference that the science didn't support the discipline back in February and that the person imposing the discipline should have made a reasonable reconsideration in that situation? Instead, he continues to retaliate in that situation. Thank you. Thank you, Mr. P. Weirden. Counsel, we appreciate your arguments and briefing. The case is submitted and will be decided in due course. This green